UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES OF AMERICA,

   *Plaintiff,*

v.                                          Case No.  SA-22-CR-302-JKP

RUBEN ANGEL SOTO,

   *Defendant.*

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Ruben Soto's motion to dismiss the indictment and the Government's response. ECF Nos. 61 and 67. Because the conduct 18 U.S.C. § 922(a)(6) proscribes is not protected under the plain text of the Second Amendment, the Court **DENIES** Soto's motion.

## BACKGROUND

Defendant is charged with conspiracy to make a false statement during purchase of a firearm (Count I) and aiding and abetting false statements in connection with the acquisition of firearms (Counts II-IV). ECF No. 3. Soto is a United States citizen who was able to pass a background check to lawfully purchase firearms. Victor Morales, the codefendant in this case, is a citizen of Mexico who is unlawfully in the United States and, therefore, unable to purchase firearms. ECF No. 54 at 2.

On May 5, 2021, a San Antonio gun dealer called the San Antonio office of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") regarding nine Beretta handguns purchased by Soto. ECF No. 48-1, August 29, 2022 Hearing Transcript at 6:1-12. On May 7, 2021, the same

gun dealer called San Antonio ATF about Soto's attempt to purchase ten Beretta Model 92 handguns. *Id*. ATF agents conducted surveillance, observed Soto purchase the handguns, and watched Soto and codefendant Morales exit the store. *Id*. at 6:13–16. ATF agents attempted to follow Soto and Morales but were unable to do so due to heavy traffic conditions. *Id*. at 7:1–14. Agents obtained the receipt and ATF Form 4473 regarding Soto's purchase of the handguns. *Id*. at 7:15–19. San Antonio ATF agents notified Laredo ATF agents that Soto and Morales were traveling on IH-35 headed toward Laredo. *Id*. at 7:15–22. Laredo ATF agents conducted a traffic stop and identified Soto and Morales. *Id*. Both men were armed with handguns. *Id*. at 7:22–23. Agents also located the ten Beretta handguns in the back of the vehicle. *Id*. at 7:25–8:1.

Soto was indicted on June 15, 2022. Soto argues the indictment should be dismissed because § 922(a)(6) is facially unconstitutional under the Second Amendment based on *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111 (2022). *See* ECF No. 61 at 1.

## LEGAL STANDARD

Although Soto does not identify the vehicle through which he seeks to challenge the indictment, the Court assumes he relies on Rule 12 of the Federal Rules of Criminal Procedure. Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* Fed. R. Crim. P. 12(d) (permitting a court to rule on a motion involving factual issues provided the court states its essential findings on the record). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *Flores*, 404 F.3d at 325.

**DISCUSSION**

The Second Amendment to the Constitution states "a well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court held the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. 570, 635 (2008). In so doing, the *Heller* Court rejected earlier interpretations of the Second Amendment which limited its application to militia members, finding the Second Amendment guarantees an individual's right to keep and bear arms, unconnected to militia service. *Id*. at 592. The Court reached its conclusion by employing a textual analysis, informed by history. *Id*. at 576–577, 592. Two years later, in *McDonald v. Chicago*, the Supreme Court held the Second Amendment applies to the states through the Fourteenth Amendment. 561 U.S. 742, 767 (2010).

Notably, the Supreme Court in *Heller* said the Second Amendment right is not unlimited. *Id*. at 626–28. Courts and commentators "[f]rom Blackstone through the 19th-century," it wrote, agree "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id*. at 626. The *Heller* Court goes on to say, although it has not undertaken a thorough analysis of the Second Amendment's scope, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on commercial sale of arms." *Id*. at 626–27. In a footnote, the *Heller* Court says these "presumptively lawful" measures are an illustrative, not exhaustive list. *Id*. at 627 n. 26.

Following *Heller*, the Fifth Circuit, like other circuits, applied a two-step inquiry for assessing the constitutionality of firearms restrictions. First, courts would determine whether the regulation fell within the scope of the Second Amendment right, looking to the text and historical tradition to inform their analysis. *United States v. McGinnis*, 956 F.3 747, 754 (5th Cir. 2020). If the regulation was outside the scope of the Second Amendment, then the law was constitutional. *Id*. If it was inside the scope of the Second Amendment, courts would apply means-end scrutiny to assess its constitutionality. *Id*. In *Bruen*, the Supreme Court declared the two-step inquiry to be "one step too many." 142 S. Ct. at 2127. The *Bruen* Court indicated its earlier rulings do not support applying means-end scrutiny, but only "a test rooted in the Second Amendment's text, as informed by history." *Id*.

At issue in *Bruen* was the constitutionality of New York State's firearms licensure regime, which conditioned issuance of a license to carry a firearm on a citizen's showing of a special need for self-defense. *Bruen*, 142 S. Ct. at 2122. New York refused to license the individual *Bruen* petitioners because they failed to establish any unique danger to their personal safety. *Id*. at 2125. The question before the *Bruen* Court was whether the regulated conduct—carrying a weapon outside the home for self-defense—was protected by the Second Amendment and, if so, whether New York's licensing regime impermissibly infringed upon that right. Applying a textual and historical analysis, the *Bruen* Court answered both questions affirmatively, holding "[b]ecause the State of New York issues public-carry licenses only when an applicant demonstrates a special need for self-defense … the State's licensing regime violates the Constitution." *Id*. at 2122.

In this case, Soto mounts a facial challenge to § 922(a)(6), arguing it is unconstitutional under the Second Amendment analysis established in *Bruen*. A facial challenge is an attack on a statute itself as opposed to a particular application. Such challenges are "the most difficult … to

mount successfully," *United States v. Salerno*, 481 U.S. 739, 745 (1987). In bringing a facial challenge, the movant must establish the statute "is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). "Facial challenges are disfavored for several reasons." *Id.* at 450. Such challenges "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Id.* (citing *Ashwander v. TVA*, 297 U.S. 288, 346–347 (1936) (Brandeis, J., concurring)). Courts must bear in mind "a ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Id.* (citing *Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 329 (2006)). The judicial power vested in courts by Article III does not include the power to veto statutes—and that is by design. *NetChoice, LLC v. Paxton*, 49 F.4th 439, 448 (2022). The Framers considered giving courts the power to veto statutes and decided against it. *Id.* As a result, when courts find a statute unconstitutional, they cannot void it, but they can decline to enforce it in a "particular case or controversy" and enjoin executive officials from enforcing it more broadly. *Borden v. United States*, 141 S.Ct. 1817, 1835–36 (Thomas, J., concurring). In other words, "[c]ourts have no authority to strike down statutory text" and "a facial challenge, if successful, has the same effect as nullifying a statute." *Id.*

Soto premises his facial challenge on the *Bruen* framework, under which, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S.Ct. at 2126. Finding the conduct at issue in *Bruen* presumptively protected, the Supreme Court then shifted the burden to the Government to "demonstrate that the regulation is consistent with the Nation's historical tradition of firearm

regulation." *Id*. Based on the Court's review of Soto's motion, Soto appears to argue (1) the plain text of the Second Amendment covers the conduct at issue in § 922(a)(6), so the conduct is presumptively protected, and (2) the Government cannot meet its burden, under the *Bruen* framework, to demonstrate § 922(a)(6) is consistent with the Nation's historical tradition of firearms regulation. The Court's review of the statute and relevant caselaw reveals, however, Soto's challenge fails under the first step of the *Bruen* analysis.

Section 922(a)(6) makes it unlawful for any person "in connection with the acquisition of any firearm from a licensed dealer . . . knowingly to make any false or fictitious oral or written statement . . . intended or likely to deceive such dealer . . . with respect to any fact material to the lawfulness of the sale or other disposition of such firearm." Thus, the "conduct" prohibited under § 922(a)(6) is knowingly making a false or fictitious oral or written statement. This conduct falls outside the conduct protected by the Second Amendment, that is: to "keep" and "bear" arms—or as *Heller* established, to "have" and "carry" weapons. *Heller*, 554 U.S. at 582–3. Soto's challenge, therefore, fails.

Because the Court finds Soto's challenge fails under the first step of the *Bruen* framework, it does not reach the government's other arguments for why Soto's challenge fails.

I.      **Section 922(a)(6)'s Proscribed Conduct**

In considering whether § 922(a)(6) proscribes constitutionally protected conduct, the Court begins with Supreme Court and Fifth Circuit precedent. District courts in the Fifth Circuit are "bound by a circuit decision unless or until it is overturned by an en banc decision of the circuit court or a decision of the Supreme Court." *Perez v. Abbott*, 250 F. Supp. 3d 123, 139 (W.D. Tex. 2017) (citing *Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1211 (5th Cir. 1991)). In this

case, precedential decisions by the Supreme Court and the Fifth Circuit lead the Court to conclude § 922(a)(6) proscribes conduct that falls outside the Second Amendment's plain text.

The legislation codifying § 922(a)(6), Title IV of the Omnibus Crime Control and Safe Streets Act of 1968 and the Gun Control Act of 1968, "aimed at restricting public access to firearms." *Huddleston v. United States*, 415 U.S. 814, 824 (1974). Under the statute, federally licensed dealers act as the principal agent of federal enforcement. *Id*. These dealers are licensed, required to keep sales records, and are subject to criminal penalties for improperly disposing of weapons. *Id*. Section 922(a)(6) "was enacted as a means of providing adequate and truthful information about firearms sales." *Id*. at 825. Information obtained from dealers' records operates as the primary method of satisfying the law's objective, which is ensuring lethal weapons do not end up in "the hands of criminals, drug addicts, mentally disordered persons, juveniles, and other persons whose possession of them is too high a price in danger to us all to allow." *Id*. "Any false statement with respect to the eligibility of a person to obtain a firearm from a licensed dealer was made subject to criminal penalty. *Id*.

In *Abramski v. U.S.*, the Supreme Court considered "how [§ 922(a)(6)] applies to a so-called straw purchaser—namely, a person who buys a gun on someone else's behalf while falsely claiming that it is for himself." 573 U.S. 169, 171–172 (2014). Federal law has regulated the sale of firearms for over four decades to ensure certain individuals do not obtain them. *Id*. at 172; *see* Gun Control Act of 1968, 18 U.S.C. § 921 *et seq*. "To implement [the] statutory requirements, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) developed Form 4473 for gun sales." *Id*. at 173. The buyer must complete a portion of the form and provide his/her name, date of birth, address, height, weight, and race. *Id*. The person must also answer whether he/she is the actual transferee/buyer of the firearms listed on the form. *Id*. The form also contains accompanying

instructions to assist the person in determining whether he/she is the actual transferee/buyer. *Id*. "[Section 922(a)(6)] helps make certain that a dealer will receive truthful information as to any matter relevant to a gun sale's legality." *Id*. at 174.

Abramski, a former police officer, was legally eligible to purchase a firearm. *Id*. at 175. He purchased a Glock 19 handgun for his uncle, who was also legally eligible to purchase a firearm. *Id*. Abramski filled out ATF Form 4473, and stated he was the actual transferee/buyer of the firearm. *Id*. Abramski purchased the firearm with money his uncle gave him because he (Abramski) thought he could purchase the firearm at a discounted rate using his old police identification. *Id*. Abramski was indicted for violations of §§ 922(a)(6) and 924(a)(1). He moved to dismiss the charges arguing his incorrect statement or answer to the actual transferee/buyer question was not material to the lawfulness of the sale because his uncle could legally own the firearm. *Id*. at 176. Abramski entered a conditional plea and was sentenced. *Id*. The Fourth Circuit affirmed his convictions. *Id*. The Fourth Circuit determined "the identity of the actual purchaser of a firearm is a constant that is always material to the lawfulness of a firearm acquisition under § 922(a)(6)." *Id*. (citing *United States v. Abramski*, 706 F.3d 307, 316 (4th Cir. 2013)).[1] Abramski's argument before the Supreme Court was that a false response to the actual transferee/buyer question is never material to the lawfulness of the sale regardless of the actual gun buyer's eligibility to own a gun. *Id*. at 177.

The Court had to answer the question, "who is the 'person' or 'transferee' whom federal gun law addresses?" *Id*. at 179. By concealing his uncle's identity as the actual buyer, Abramski prevented the dealer from having a face-to-face transaction with him. *Id*. at 188. The uncle, as the

---

[1] Abramski relied on *United States v. Polk*, 188 F.3d 286, 295 (5th Cir. 1997) to support his position that an untruthful answer to the actual transferee/buyer question is immaterial to the lawfulness of sale. The Supreme Court opinion in the 2014 *Abramski* case abrogated the holding in *Polk* on that issue. *See* 573 U.S. 169 (2014).

actual buyer, did not provide his name, age, address, and identification to allow the federally licensed dealer to conduct the necessary background check to determine whether he was eligible to receive the firearm. *Id*. "We can hardly think of a misrepresentation any more material to a sale's legality." *Id*. "If the dealer here, Town Police Supply, had realized it was in fact selling a gun to [Abramski's uncle], it would have had to stop the transaction for failure to comply with [the statute's] conditions." *Id*. at 189. The statute's requirements "pertain to the real buyer"— Abramski's uncle. *Id*. "No piece of information is more important under federal firearms law than the identity of a gun's purchaser—the person who acquires a gun as a result of a transaction with a licensed dealer." *Id*. at 193. The Supreme Court, therefore, held Abramski's misrepresentation was material under § 922(a)(6). *Id*. at 176.

In *U.S. v. Frazier*, the Fifth Circuit found "it is the making of the false statement by Frazier which was proscribed by the statute and, therefore, illegal." 547 F.2d 272, 274 (5th Cir. 1977). Frazier pawned his father's rifle. *Id*. at 273. Frazier and his father returned to the pawn shop to redeem the rifle, and Frazier filled out ATF Form 4473. *Id*. He stated he was not a felon. *Id*. Frazier was charged with, and convicted of, violating § 922(a)(6). *Id*. On appeal, Frazier argued his false answers on ATF Form 4473 were immaterial and insufficient to uphold his conviction because the rifle could have been or was acquired by his father, who was not a felon. *Id*. The court cited *United States v. White*, 451 F.2d 696 (5th Cir. 1971), which concluded "[t]he statute requires only a false statement in connection with the acquisition, whether or not that statement is made by the actual purchaser; [i]n short, false statements on the form, which contain the restrictions on sales, are illegal." *Id*. "One who makes a false statement in connection with the acquisition of a firearm is liable under Section 922(a)(6) whether or not he is the actual purchaser." *Id*. at 274.

9

In a more recent Fifth Circuit case, *U.S. v. Guerrero*, Delbert Lee Guerrero was convicted after a jury trial of violating § 922(a)(6). 234 F.3d 259 (5th Cir. 2000). Guerrero filled out ATF Form 5300.35 ("Brady form" or "statement of intent to obtain handguns"), and falsely stated he was not under felony indictment. *Id*. at 261. On appeal, Guerrero argued his false statement was not likely to deceive because the dealer would complete the background check, which would reveal he was not eligible to purchase the weapon, and he was therefore not liable for vain deceit. *Id*. at 262. "The fact that a lie may not have been ultimately successful, however, does not negate the criminal act." *Id*. "Evidence of immediate, even if temporary, deception supports a conviction under a statute that looks for whether the statement is likely to deceive." *Id*. It is immaterial whether the weapon was ultimately acquired." *Id*. at 262–263. The Fifth Circuit favorably referred to the Eighth's Circuit's opinion in *United States v. Gardner*, which determined "the offense [922(a)(6)] is committed whether or not a firearm is acquired." *Guerrero*, 234 F.3d at 263, fn. 3 (citing *United States v. Gardner*, 605 F.2d 1076, 1077 (8th Cir. 1979)). Gardner clearly distinguished between possession-based firearms crimes and deception-based firearms crimes, such as those implicated by § 922(a)(6). *Gardner*, 605 F.2d at 1077.[2] The Eighth Circuit stated, "possession is unique to Count III [possessing and transporting a firearm as a felon] just as a false statement is unique to Count I [the § 922(a)(6) charge]." *Id*. Therefore, a violation of § 922(a)(6) is completed when a person makes a false statement to a federally licensed firearms dealer regardless of whether the person acquires or possesses the firearm.

In *United States v. Fields*, the Fifth Circuit stated, "the government must show that the defendant knowingly made false statements and that such statements were intended to deceive or

---

[2]  Gardner was charged with, and convicted of, (1) knowingly making a false statement to a licensed firearms dealer in connection with the acquisition of a firearm, (2) receiving as a felon a firearm which had been shipped in interstate commerce, and (3) possessing and transporting in commerce a firearm, having been previously convicted of a felony.

likely to deceive a federally licensed firearms dealer with respect to any fact material to the lawfulness of the sale." 977 F.3d 358, 363 (5th Cir. 2020); *see also United States v. Baker*, No. 3:20-CR-97-HTW-LGI, WL 17338450 *2 (S.D. Miss. Nov. 30, 2022) regarding the four elements of a § 922(a)(6) offense: (1) the defendant knowingly made (2) a false or fictitious oral or written statement that was (3) material to the lawfulness of the sale or disposition of a firearm and was (4) intended to deceive or likely to deceive a firearms dealer. Based on this caselaw, the Court finds ample support for the conclusion that the government is not required to charge or prove that a defendant possessed the firearm to secure a conviction in a § 922(a)(6) case. Section 922(a)(6) proscribes knowingly making a false or fictitious oral or written statement—conduct which does not implicate the Second Amendment.

## II.     Soto's Statements on ATF Form 4473

In this case, Soto filled out sixteen ATF Form 4473[3] documents. On the top of each form the following warning appears:

> **WARNING: The information you provide will be used to determine whether you are prohibited by Federal or State law from receiving a firearm. Certain violations of the Gun Control Act, 18 U.S.C. 18 U.S.C. 921 et seq., are punishable by up to 10 years imprisonment and/or up to a $250,000 fine.**

The heading also advised Soto to read the notices, instructions, and definitions on the form. Question nine of the form asked for the identity of the transferee/buyer's name. Question ten asked for the person's address. The form also includes questions regarding the person's height, weight, gender, date of birth, social security number, ethnicity, race, and citizenship. The most important question in Soto's case is question 21(a), which asks "are you the actual transferee/buyer of the

---

[3] The Court requested, and the government produced, the ATF Form 4473 documents Soto allegedly filled out because the Court needed to review the ATF Form 4473 that was in effect when Soto allegedly presented himself to the federally licensed firearms dealer. ATF Form 4473 has been revised and the version which is available to download is slightly different that the forms Soto allegedly filled out.

firearm(s) listed on this form or any continuation sheet(s) (ATF Form 5300.9A)?" Soto selected "yes" in response to question 21(a). A warning, which precedes the answer boxes, states: "**Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.**"

Based on *Abramski*, the person whose identity needed to be scrutinized in this case is codefendant Morales because he would have been the actual transferee/buyer of the firearms. The indictment in this case—and the ATF Form 4473 documents—reflect Soto presented himself to the federally licensed firearms dealer, filled out the ATF forms, and stated he was the actual transferee/buyer of the firearms. Soto was "the man at the counter," but was not the actual transferee. See *Abramski*, 573 U.S. at 183. Soto stated he was the actual transferee when he was in fact the straw purchaser and codefendant Morales was the transferee. This is the conduct § 922(a)(6) proscribes. Whether Soto possessed or actually acquired any of the firearms is immaterial to a § 922(a)(6) charge. Soto's alleged actions prevented the licensed dealer from analyzing codefendant Morales' eligibility to purchase a firearm. For purposes of § 922(a)(6) criminal liability, it is irrelevant that Soto was eligible to purchase a firearm when he allegedly falsified information on the ATF form. In regulating federally licensed firearms sales, the Court "looks through the straw to the actual buyer." *Id*. at 179.

Here, the Court looks through Soto to codefendant Morales. "The individual who sends a straw to a gun store to buy a firearm is transacting with the dealer, in every way but the most formal; and this distinguishes such a person from one who buys a gun, or receives a gun as a gift, from a private party." *Id*. at 186. Codefendant Morales conducted business with the licensed firearms dealer even though Soto was the man at the counter. When Soto allegedly falsified his

identity as the actual transferee/buyer intending to deceive or likely to deceive the dealer with respect to any fact material to the lawfulness of the sale, the § 922(a)(6) offense was complete. Soto's alleged conduct is not covered by the plain text of the Second Amendment. The government will have prove Soto's guilt beyond a reasonable doubt at trial, but the case can move forward because the statute does not violate the Second Amendment.

Judicial restraint requires courts to avoid constitutional questions where possible. "When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that [courts] will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 348 (1936) (Brandeis, J., concurring) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). In this case, the court finds overwhelming authority—by the Fifth Circuit and the Supreme Court—in favor of upholding the constitutionality of § 922(a)(6). The Court, therefore, resolves this matter consistent with that authority. Section 922(a)(6) is constitutional, and Soto's motion fails.

## CONCLUSION

The Court finds the *Bruen* decision does not constitute an intervening change in law which renders § 922(a)(6) unconstitutional. Therefore, Soto's motion to dismiss the indictment (ECF No. 61) is **DENIED**.

It is so ORDERED.
SIGNED this 27th day of January, 2023.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE